UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TRACEY ALEXANDER VINSON,

    Plaintiff,

v.

ANDREW FAIR,

    Defendant.

Case No. 24-12003
Honorable Laurie J. Michelson
Magistrate Judge Kimberly G. Altman

**OPINION AND ORDER OVERRULING OBJECTIONS [26], ADOPTING IN PART REPORT AND RECOMMENDATION [25], AND GRANTING DEFENDANT FAIR'S MOTION TO DISMISS [17] AND DEFENDANTS' FAIR, BURRIS, AND MCGUIRE'S MOTION TO STRIKE [20]**

Tracey Alexander Vinson alleges that he was subjected to excessive force in violation of the Fourteenth Amendment while incarcerated at the Washtenaw County Jail as a pretrial detainee. In his initial complaint, Vinson sued Corrections Officers Fair, McGuire, and Lucidi, Sergeant Burris, and "health care staff" under 42 U.S.C. § 1983. (ECF No. 1.) Following the Court's preliminary screening pursuant to 28 U.S.C. § 1915(e)(2)(B), only Vinson's Fourteenth Amendment claim against Fair in his individual capacity remained, and the dismissed defendants were terminated from the docket. (ECF No. 5.) The case was referred to Magistrate Judge Kimberly G. Altman for all pretrial matters. (ECF No. 9.) Within the week, Vinson filed an amended complaint as of right against Fair only (ECF No. 10), which Fair moved to dismiss based on qualified immunity (ECF No. 17). Vinson then filed a second amended complaint against Fair, Burris, and McGuire without first seeking leave

under Federal Rule of Civil Procedure 15(a)(2). (ECF No. 19.) Fair, Burris, and McGuire jointly moved to strike Vinson's second amended complaint as improperly filed or, in the alternative, to dismiss the complaint as futile under Rule 12(b)(6). (ECF No. 20.)

Now before the Court is Judge Altman's report and recommendation to grant both motions. (ECF No. 25.) She concludes that Fair is entitled to qualified immunity and that amendment would be futile because McGuire and Burris would likewise be entitled to qualified immunity. Vinson, who is no longer incarcerated, timely filed objections (ECF No. 26), to which Fair responded (ECF No. 27). For the reasons below, the Court overrules Vinson's objections, adopts in part the report and recommendation, and grants Fair's motion to dismiss and Fair, Burris, and McGuire's motion to strike.[1]

## I.

In his first amended complaint, i.e., his operative complaint, Vinson alleges that while he was a pretrial detainee at the Washtenaw County Jail, Corrections Officer Andrew Fair used excessive force against him in violation of his Fourteenth Amendment rights. (ECF No. 10.) He says that Fair and three other officers escorted him into a cell and directed him to kneel on the bed so they could remove his arm and leg restraints. (*Id.* at PageID.39.) He alleges that "when [he] knelt on the bed with one leg," Fair "grabbed [him] from behind and threw [him] on the metal frame of the

---

[1] Although only Fair is a defendant, the Court refers to Fair, Burris, and McGuire as "the defendants" throughout this opinion to underscore that the reasons Fair is entitled to dismissal are equally applicable to Burris and McGuire.

2

bed[,] causing [him] to hit [his] forehead on the metal frame of the bed," which in turn caused "a contusion on [his] head, and internal bleeding and swelling from the untreated injury overtime by health care staff." (*Id.*) Fair alleges he "now ha[s] a spinal condition called cervical Lordosis and ha[s] to attend physical therapy because [he is] paralyzed in [his] neck from making certain movements." (*Id.*; *see id.* at PageID.40 ("I believe I have permanent brain damage and a have a paralyzing spinal condition for the rest of my life.").)

Fair moves to dismiss that complaint, arguing that he is entitled to qualified immunity from Vinson's excessive force claim. (ECF No. 17.) He attaches body camera footage to the motion (ECF No. 17-1), which he says clearly contradicts Vinson's version of events. As explained in Judge Altman's report and recommendation (*see* ECF No. 25, PageID.138–139 (quoting *Black v. City of Royal Oak*, No. 23-12371, 2024 WL 4220711, at *2 (E.D. Mich. Sept. 17, 2024))), the Court may consider this footage on Fair's motion to dismiss, *see Bailey v. City of Ann Arbor*, 860 F.3d 382, 386 (6th Cir. 2017) (approving consideration of video evidence on motion to dismiss where the video "cover[ed] the whole [incident]" and "utterly discredit[ed]" plaintiff's version of events); *Reynolds v. Szczesniak*, No. 21-2732, 2022 WL 3500191, at *3 (6th Cir. Aug. 18, 2022) (affirming this Court's consideration of dash cam and body cam footage on motion to dismiss where "the complaint reference[d] the video," the video "captured the central events upon which the [plaintiff's] claims rely," and "neither party contested the inclusion of the videos"); *see also Bell v. City of Southfield*, 37 F.4th 362, 364 (6th Cir. 2022) ("[W]hen uncontroverted video evidence easily resolves a case, we

3

honor qualified immunity's principles by considering the videos."). In so doing, the Court "view[s] the facts in the light depicted by the videotape," "need not credit the version of the party who asserts facts 'blatantly contradicted' by" the footage, *Cunningham v. Shelby County*, 994 F.3d 761, 763 (6th Cir. 2021), and must resolve "any relevant gaps or uncertainties left by the videos" in Vinson's favor, *LaPlante v. City of Battle Creek*, 30 F.4th 572, 578 (6th Cir. 2022); *see Black*, 2024 WL 4220711, at *2.

According to Fair, the body cam footage "blatantly contradict[s]" Vinson's allegations in the following ways. *See Cunningham*, 994 F.3d at 763. First, the video shows that Vinson "did not comply with two orders to lay down on the bunk." (ECF No. 17, PageID.70–71.) Second, it "demonstrates that Officer Fair did not grab Plaintiff and throw him on the bunk without cause. Rather, the video shows that Officer Fair and other officers did not apply any force until [Vinson] lunged to his left away from bunk." (*Id.* at PageID.71.) And, says Fair, the amount of force that he and the other officers applied was "sufficient . . . to get [Vinson] face down on the bunk." (*Id.*) Fair in turn argues that his use of force was not objectively unreasonable under the Fourteenth Amendment and did not violate a clearly established constitutional right. (*Id.*) He elaborates as to the latter that "[u]nder these circumstances, no reasonable officer would have understood that using sufficient force to gain control over [Vinson] to enforce their lawful orders would violate [Vinson's] constitutional rights" (*id.* at PageID.72) and that he "had a legitimate interest as a correctional

4

officer 'to preserve internal order and discipline and to maintain institutional security'" (*id* (quoting *Kingsley v. Hendrickson*, 576 U.S. 389, 396–97 (2015))).

After Fair filed his motion to dismiss on December 23, 2024, Vinson filed a second amended complaint on December 31, 2024 (ECF No. 19) without first seeking leave as required under Federal Rule of Civil Procedure 15(a)(2). In that filing, Vinson re-names as defendants Corrections Officer McGuire and Sergeant Burris and adds a few new allegations. (*See id.* at PageID.82.) He alleges that not only Fair but also McGuire "grabbed" him as he was kneeling on the bed. (*Compare* ECF No. 10, PageID.39 ("[W]hen I knelt on the bed with one leg [O]ffic[e]r Fair grabbed me from behind and threw me on the metal frame of the bed . . . ."), *and* ECF No. 1, PageID.7 ("Fair grabbed me and threw me on the cell bed while I was kneeling on the bed to lay down . . . ."), *with* ECF No. 19, PageID.82 ("[B]oth officers Mc[G]uire and Fair grabbed me as you can see in the video with my leg knelt on the bed as I was trying to lay down and threw me on the bed . . . .").) He also alleges that not only was he "thr[o]w[n]" on the bed, such that he hit his head on the metal bed frame (ECF No. 10, PageID.39; *see also* ECF No. 1, PageID.7), but also that "[t]he officers put their knees on [his] back and lower neck" (ECF No. 19, PageID.82). Finally, he says that he is "suing [O]fficer Burris because she was the officers['] supervisor that had the responsibility to give the officers orders to not use that force with [him] when [he] wasn't attempting to fight the officers back." (*Id.*)

Fair, McGuire, and Burris move to strike that second amended complaint. (ECF No. 20.) They first assert that Vinson violated Federal Rule of Civil Procedure

5

15(a)(2) because he sought neither consent from Fair nor leave from the Court. (*Id.* at PageID.95–96.) They argue in the alternative that amendment would be futile because McGuire and Burris, like Fair, are entitled to qualified immunity. (*Id.* at PageID.96, 103–108.) On that score, they make the same arguments as Fair, but add that Burris cannot be held liable on the basis of supervisory liability. (*Id.* at PageID.105–106.) Vinson filed a response addressing only the defendants' alternative argument for dismissal, not their argument that his second amended complaint was filed in violation of Rule 15(a)(2). (ECF No. 21; *see* ECF No. 22 (reply brief).)

Judge Altman recommends granting both motions. (ECF No. 25.) She concludes that Fair is entitled to qualified immunity, both because no constitutional violation occurred and because any such violation was not clearly established (*id.* at PageID.143–146), and that McGuire and Burris would be entitled to qualified immunity for the same reasons, making amendment of Vinson's complaint futile (*id.* at PageID.147–148).

For the reasons below, the Court agrees that both motions should be granted but declines to reach the question of whether a constitutional violation occurred.

## II.

When a party objects to a magistrate judge's report and recommendation, a district judge reviews *de novo* those portions to which the party has objected. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(3). However, "[t]he district court need not provide *de novo* review where the objections are frivolous, conclusory or general. The parties have the duty to pinpoint those portions of the magistrate's report that the

6

district court must specially consider." *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986) (cleaned up). "A general objection, or one that merely restates the arguments previously presented, is not sufficient to alert the court to alleged errors on the part of the magistrate judge." *Aldrich v. Bock*, 327 F. Supp. 2d 743, 747 (E.D. Mich. 2004). The Court has no obligation to review unobjected-to issues. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985); *Garrison v. Equifax Info. Servs.*, LLC, No. 10-13990, 2012 WL 1278044, at *8 (E.D. Mich. Apr. 16, 2012).

Considering these standards, the Court must review at least the evidence that was before the magistrate judge, then may accept, reject, or modify the findings and recommendation. *See Hill v. Duriron Co.*, 656 F.2d 1208, 1215 (6th Cir. 1981); Fed. R. Civ. P. 72(b)(3). The Court may adopt the magistrate judge's report without specifying what it reviewed. *Abousamra v. Kijakazi*, 656 F. Supp. 3d 701, 705 (E.D. Mich. 2023) ("If the court will adopt the R&R, then it may simply 'state that it engaged in a *de novo* review of the record and adopts the [R&R]' without 'stat[ing] with specificity what it reviewed.'" (alterations in original) (quoting *United States v. Robinson*, 366 F. Supp. 2d 498, 505 (E.D. Mich. 2005))).

### III. Motion to Dismiss

The Court need not repeat Judge Altman's detailed explanation of qualified immunity here. (*See* ECF No. 25, PageID.139–140.) It is sufficient for present purposes to highlight three aspects of this defense: (1) "[o]fficials are not liable [under § 1983] for bad guesses in gray areas; they are liable for transgressing bright lines," *Parsons v. City of Ann Arbor*, No. 22-1338, 2023 WL 3413898, at *2 (6th Cir. May 12,

7

2023); (2) it is "entirely appropriate" for the Court to grant a motion to dismiss based on qualified immunity when "the validity of a qualified immunity defense" is "apparent from the face of the complaint," *Black*, 2024 WL 4220711, at *5 (quoting *Witzke v. Rieck*, No. 21-11346, 2022 WL 2541131, at *4 (E.D. Mich. July 7, 2022); *Batton v. Sandusky County*, No. 23-3168, 2024 WL 1480522, at *2 (6th Cir. Apr. 5, 2024)); and (3) once a defendant raises the defense, the burden is on the plaintiff to show that the Court should not grant qualified immunity, *Johnson v. Moseley*, 790 F.3d 649, 653 (6th Cir. 2015). "The Court takes the facts in the light most favorable to the party asserting injury and asks two questions," *Black*, 2024 WL 4220711, at *6, which it may answer "in any order," *Martin v. City of Broadview Heights*, 712 F.3d 951, 957 (6th Cir. 2013). That is, "do the facts show that the officer's conduct violated a constitutional right, and was the right clearly established such that 'every reasonable official would have understood that what he is doing violates that right'?" *Black*, 2024 WL 4220711, at *6 (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015)). If the answer to either question is "no," the defendant is entitled to qualified immunity. *See Cunningham*, 994 F.3d at 764.

The Court begins and ends with the clearly established prong.

To carry his burden of showing that a right is clearly established, *see Everson v. Leis*, 556 F.3d 484, 494 (6th Cir. 2009), including at the motion to dismiss stage, *see Bell v. City of Southfield*, 37 F.4th 362, 367 (6th Cir. 2022), Vinson "must point to 'existing precedent' that has 'placed the statutory or constitutional question beyond debate,'" *Whyde v. Sigsworth*, No. 22-3581, 2024 WL 4719649, at *8 (6th Cir. Nov. 8,

8

2024) (quoting *Bell*, 37 F.4th at 367). And "when it comes to excessive force, the [Supreme] Court has repeatedly told us that specific cases are 'especially important.'" *Bell*, 37 F.4th at 367; *see Whyde*, 2024 WL 4719649, at *7 ("Because excessive-force claims turn on the facts and circumstances of each case, 'specificity is especially important' in this context." (quoting *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 6 (2021) (per curiam))).

Yet in his response to Fair's motion to dismiss, Vinson all but failed to address the clearly established prong of the qualified immunity defense. (*Compare* ECF No. 21, PageID.112 ("Qualified immunity does not shield Defendants because the right to be free from excessive force was clearly established at the time of the incident. The conduct alleged—using unnecessary and excessive force on a restrained detainee—violates clearly established law under Kingsley and other precedents and also including the 14th Amendment.")), *with Clemente v. Vaslo*, 679 F.3d 482, 490 (6th Cir. 2012) ("It is important to emphasize that [the clearly established] inquiry 'must be undertaken in light of the specific context of the case, not as a broad general proposition.' . . . . The relevant, dispositive inquiry is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." (citation modified)), *and Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011) ("The general proposition, for example, that an unreasonable search or seizure violates the Fourth Amendment is of little help in determining whether the violative nature of particular conduct is clearly established."). This failure alone entitles the defendants to qualified immunity. *See, e.g.*, *Bell*, 37 F.4th at 367 (concluding that dismissal under 12(b)(6)

was warranted where plaintiff failed to provide "on-point," binding case law showing clearly established right to be free from the specific use of force alleged); *see also Everson*, 556 F.3d at 494 ("The plaintiff has the burden of showing that a right is clearly established.").

Vinson's objections to Judge Altman's report and recommendation fare no better. He focuses solely on why he believes his constitutional rights were violated—but, as explained, a constitutional violation does not by itself make an officer liable under § 1983. "To prevail on an excessive-force claim" and defeat qualified immunity, Vinson "must show that the officers' use of physical force amounted to a violation of [his] *clearly established* constitutional rights." *Meadows v. City of Walker*, 46 F.4th 416, 422 (6th Cir. 2022) (emphasis added). Again, nowhere in Vinson's objections does he address the clearly established inquiry or any purported error in Judge Altman's analysis of the issue. (*See* ECF No. 26.) That constitutes a waiver of this Court's review of those findings. *See United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir. 1981) ("[A] party shall file objections with the district court or else waive right to appeal."); *Thomas*, 474 U.S. at 155 (holding that the Sixth Circuit's rule of procedural default does not violate the Federal Magistrates Act or the federal Constitution); *see also Garrison*, 2012 WL 1278044, at *8 ("The Court is not obligated to review the portions of the report to which no objection was made."); *Howard v. Sec'y of Health & Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991) ("A general objection to the entirety of the magistrate's report has the same effects as would a failure to object."); *Bradley v. United States*, No. 18-1444, 2018 WL 5084806, at *3 (6th Cir. Sept. 17, 2018) ("A

10

party's objections are not sufficiently specific if they merely restate the claims made in the initial petition, dispute the correctness of a report and recommendation without specifying the findings purportedly in error, or simply object to the report and recommendation and refer to several of the issues in the case.'" (citation modified) (quoting *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995))).

The Court will nonetheless briefly explain why it agrees with Judge Altman's conclusion that it was not clearly established whether, on these facts, the at-issue use of force was excessive within the meaning of the Fourteenth Amendment.

### A.

Recall that, as Judge Altman explained (ECF No. 25, PageID.140–141), the Fourteenth Amendment protects pretrial detainees from the use of excessive force by jail staff and other government officials, *see Kingsley*, 576 U.S. at 397. For a defendant's use of force to be excessive within the meaning of the Fourteenth Amendment, it must be "objectively unreasonable" from "the perspective of a reasonable [official] on the scene, including what the [official] knew at the time, not with the 20/20 vision of hindsight." *Howell v. NaphCare, Inc.*, 67 F.4th 302, 320 (6th Cir. 2023) (alterations in original); *see Feagin v. Mansfield Police Dep't*, No. 24-3710, 2025 WL 2621665, at *5 (6th Cir. Sept. 11, 2025) (explaining that the facts are "viewed in a light most favorable to the plaintiff, but through the lens of a reasonable officer at the scene"); *see also Cretacci v. Call*, 988 F.3d 860, 869 (6th Cir. 2021) (explaining the factors that Sixth Circuit courts consider when assessing whether the at-issue force was objectively unreasonable). The relevant question under the clearly

11

established prong is narrower: Even assuming the force used *was* excessive under the Constitution, would "every reasonable official" have understood that on these facts? *Reich v. City of Elizabethtown*, 945 F.3d 968, 981 (6th Cir. 2019). Having carefully reviewed the record, including the body cam footage attached to Fair's motion to dismiss, the Court cannot say that they would have.

That footage clearly shows the following. (*See* ECF No. 17-1, Video Ex. 1, Body Cam.) First, Vinson was not complying with officers' instructions to lay down on the bed so they could remove his arm and leg restraints. (*Id.* at 00:13–00:17; *see* ECF No. 25, PageID.143.) Officers "twice ordered" Vinson to lay down, and Vinson "twice refused." *Whyde*, 2024 WL 4719649, at *2; (*see* ECF No. 17, PageID.70–71.) More importantly, following his noncompliance, Vinson made a sudden movement in Fair's direction "with enough force to pull both of the officers [holding Vinson on either side, i.e., Fair and McGuire,] with him." (ECF No. 25, PageID.144 n.6; *see* Video Ex. 1, 00:18–00:22.) Only at that point did Fair and McGuire push Vinson into the bed so they could remove his restraints as intended. (ECF No. 17, PageID.71 ("The video . . . demonstrates that Officer Fair did not grab [Vinson] and throw him on the bunk without cause. Rather, the video shows that Officer Fair and other officers did not apply any force until [Vinson] lunged to his left away from [the] bunk.").) Vinson's repeated objection that he was "cooperative" (ECF No. 21, PageID.111–112; ECF No. 26, PageID.150) is thus plainly at odds with the footage. As is his objection that officers "instantly threw [him] face first" onto the bed and into the metal bedframe, unprompted. (ECF No. 26, PageID.151; *see id.* at PageID.152.) The video footage is

unclear only as to the precise nature of Vinson's sudden movement toward Fair—whether he "lunged" or tried to "escape[]"as Fair contends (ECF No. 17, PageID.71–72) or more generally "lurched" or "abruptly stumble[d]" in Fair's direction (ECF No. 25, PageID.143 & n.5; *see* ECF No. 17, PageID.68). But it is clear that this sudden movement is what prompted the takedown. Vinson ignores that he made this movement at all.

The Sixth Circuit has emphasized in the Fourth Amendment arrest context that the line between passive and active resistance, and thus between constitutional and unconstitutional force, can be a fine one. *See, e.g.*, *King v. City of Rockford*, 97 F.4th 379, 397 (6th Cir. 2024) (describing the "end[s] of the spectrum"—clearly passive resistance "[o]n one end," i.e., mere noncompliance without "any 'outward manifestation' that 'suggested volitional and conscious defiance' toward the officer," and clearly active resistance "[o]n the other end," i.e., "repeated[] refus[al] to comply and physical[] resist[ance]"—and concluding that the plaintiff's conduct "runs close to the line" and "does not fit cleanly within" existing case law); *Thomas v. City of Eastpointe*, 715 F. App'x 458, 461 (6th Cir. 2017) (concluding that arrestee's actions did "not fit cleanly into either camp" as between active and passive resistance and explaining that many cases "stand in this gray area"); *see also Feagin*, 2025 WL 2621665, at *4 ("What is 'active' resistance? Physical struggles with the police qualify. But so can conduct that is perhaps intuitively not all that active.").[2] Similarly fine

---

[2] The Sixth Circuit has also suggested some uncertainty as to the passive/active distinction and the status of mere noncompliance itself. *Compare Eldridge v. City of Warren*, 533 F. App'x 529, 535 (6th Cir. 2013) ("If there is a common

distinctions are made between active and passive resistance in the context of excessive force claims by pretrial detainees under the Fourteenth Amendment, *see, e.g.*, *Whyde*, 2024 WL 4719649, at *7–8 (summarizing distinction between passively and actively resisting arrest for purposes of Fourth Amendment excessive force claims then applying same standards to analyze whether pretrial detainee passively or actively resisted officers' orders under Fourteenth Amendment); *Coley v. Lucas County*, 799 F.3d 530, 540 (6th Cir. 2015) ("Under the Fourteenth, Fourth, or Eighth Amendments, assaults on subdued, restrained and nonresisting detainees, arrestees, or convicted prisoners are impermissible."), with the additional considerations the jail setting brings, *see Cretacci*, 988 F.3d at 869 (explaining that the objective reasonableness of force used against a pretrial detainee "must . . . account for the jail's legitimate interest in maintaining their facility, deferring to policies and practices that are needed to preserve internal order and discipline to maintain institutional security").

Vinson's conduct "runs close to the line distinguishing passive resistance from active." *King*, 97 F.4th at 397. He was plainly noncompliant, but it is debatable

---

thread to be found in our caselaw on this issue, it is that noncompliance alone does not indicate active resistance; there must be something more."), *Browning v. Edmonson County*, 18 F.4th 516, 526–27 (6th Cir. 2021) ("Whatever 'active' means, it has to mean something more than mere silence and inaction."), *and Rudlaff v. Gillispie*, 791 F.3d 638, 641 (6th Cir. 2015) ("Active resistance . . . includes refusing to move your hands for the police to handcuff you, at least *if that inaction is coupled with other acts of defiance.*"), *with Kent v. Oakland County*, 810 F.3d 384, 392 (6th Cir. 2016) ("Active resistance includes 'physically struggling with, threatening, *or disobeying officers.*'" (emphasis added)), *and Meadows*, 46 F.4th at 431 (Nalbandian, J., dissenting) ("[Sixth Circuit] published caselaw is clear that noncompliance . . . is either active resistance, or at the very least in a grey area.").

14

whether his sudden movement toward Fair constituted that "something more" so as to bring him into the realm of "active" rather than "passive" resistance. It follows that any constitutional right Vinson had to be free from the force used in the officers' takedown was not clearly established on these facts. *See id.* ("Because King's conduct 'does not fit cleanly within' our existing excessive force case law, King cannot overcome the clearly established hurdle of qualified immunity."); *Feagin*, 2025 WL 2621665, at *5 ("In this zone of twilight, when the evidence . . . presents a 'complex situation[],' leaving the exact nature of the threat or degree of resistance unclear, we give officers the benefit of the doubt and excuse any reasonable mistake of judgment in deploying a taser."); *Thomas*, 715 F. App'x at 461 (granting qualified immunity under clearly established prong where plaintiff's actions "f[e]ll somewhere in the middle" between active and passive resistance). Indeed, "when the facts confronting an officer leave ambiguity about whether the officer's actions violate a constitutional right, the officer is entitled to qualified immunity." *Meadows*, 46 F.4th at 423; *see Hagans v. Franklin Cnty. Sheriff's Off.*, 695 F.3d 505, 511 (6th Cir. 2012) ("The essence of qualified immunity . . . is to give government officials cover when they resolve close calls in reasonable (even if ultimately incorrect) ways.").

And, importantly, Fair could have reasonably perceived Vinson to be actively resisting when he abruptly lurched in Fair's direction. *See Stanfield v. City of Lima*, 727 F. App'x 841, 850 (6th Cir. 2018) (concluding that officer was entitled to qualified immunity under clearly established prong and reasoning that "[a]lthough [the plaintiff] argues that he lost his balance and was not trying to resist the officers'

15

attempts to handcuff him, it was reasonable for [the officer] to perceive [the plaintiff's] movements as resistance, albeit slight resistance"); *Thomas*, 715 F. App'x at 460 (similarly defining the question under the clearly established prong as whether "an officer [may] tase someone he reasonably perceives to be ignoring his commands and walking away" and finding that officer was entitled to qualified immunity); *Scott v. Kent County*, 679 F. App'x 435, 441 (6th Cir. 2017) ("While [the plaintiff] was being removed from a cell for disruptive conduct, he stepped towards [the officer] in close quarters, unhandcuffed and with clenched fists. We have not found other Supreme Court or Circuit precedent that would have put [the officer] on notice that his takedown was an excessive use of force in this situation."); *see also Meadows*, 46 F.4th at 424 ("[I]f from the officers' perspective [Plaintiff] could be seen as possibly engaged in active resistance, then qualified immunity would presumably be warranted, and this would be true even if the officer was not entirely sure."). "The fact that this episode took place inside a jail only strengthens [this] conclusion." *Whyde*, 2024 WL 4719649, at *7; (*see also* ECF No. 17, PageID.72 ("Plaintiff's failure to comply with the officers' orders and his decision to lurch away from the officers threatened the jail's internal order and discipline and created a substantial risk that Officer Fair or one of the other officers could be injured if Plaintiff successfully escaped the officers' control. Under these circumstances, no reasonable officer would have understood that using sufficient force to gain control over Plaintiff to enforce their lawful orders would violate Plaintiff's constitutional rights.").)

The Court will not wade into the more difficult question of whether Vinson's conduct amounted to active resistance and whether the force the defendants used was or was not objectively unreasonable. Because it was not beyond constitutional debate that under these circumstances Vinson had a right to be free from the force used in the takedown, the defendants are entitled to qualified immunity.

### B.

Vinson's objections are addressed only to the issue of whether a constitutional violation occurred, so, as explained, they cannot defeat qualified immunity. *See Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016) ("These two steps [under the 'two-tiered' qualified immunity inquiry] may be addressed in any order, but both must be answered in the affirmative for the plaintiff's claim to proceed. If either step is not satisfied, then qualified immunity shields the government officer from civil damages." (citation modified)); *Feagin*, 2025 WL 2621665, at *7 ("At day's end, [the plaintiff] has failed to even hint at a case with 'facts like the ones at issue here' . . . . With nothing to suggest [the officer] should have been on notice about the putative unlawfulness of his conduct, [the plaintiff] would fail to overcome [the defendant's] assertion of qualified immunity as to the tasing claim, had he made out a constitutional violation (which, again, he did not)." (citation omitted)).

### IV. Motion to Strike

Finally, the Court will grant Defendants' motion to strike or in the alternative to dismiss (ECF No. 20).

17

As Defendants explain, Federal Rule of Civil Procedure 15(a)(1) provides that "[a] party may amend its pleading once as a matter of course." Vinson filed his first amended complaint (ECF No. 10) pursuant to this rule.[3] Rule 15(a)(2) in turn precluded Vinson from filing a second amended complaint without consent of the defendants or leave of court. *See* Fed. R. Civ. P. 15(a)(2) (providing that, after a party has amended its pleading once as a matter of course under subsection (1), "a party may amend its pleading only with the opposing party's written consent or the court's leave"). The Court thus agrees with Defendants that striking the second amended complaint would be proper, such that it would not be necessary to reach the alternative argument of futility. (*See* ECF No. 20, PageID.95–96.) But the Court also agrees with Judge Altman's analysis on that alternative argument—specifically, that McGuire and Burris would be entitled to qualified immunity just as Fair is (*see* ECF No. 25, PageID.146–148) and that Vinson fails to state a plausible basis for supervisory liability (*id.* at PageID.47 n.7 (*Peatross v. City of Memphis*, 818 F.3d 233, 241 (6th Cir. 2016))), so any amendment would be futile.

---

[3] Defendants also contest whether Vinson's first amended complaint was properly filed. They assert that the FAC "appears to have been filed outside of the 21-day window to amend as of right and without leave of the Court" but that they nonetheless "did not seek to have that complaint stricken." (ECF No. 20, PageID.95 n.1.) It is unclear from what date the Defendants measure "the 21-day window." But it appears that Vinson's initial complaint was served on October 22, 2024 (*see* ECF Nos. 8, 12, 14, 15), making his amendment on October 30, 2024 (*see* ECF No. 10) proper under Rule 15(a)(1)(A), which allows amendment as a matter of course within 21 days of service.

## V.

In sum, the Court has carefully reviewed Vinson's complaint (ECF No. 10), Fair's motion to dismiss (ECF No. 17), Fair, Burris, and McGuire's motion to strike or in the alternative to dismiss (ECF No. 20), the parties' briefing (ECF No. 21 (Vinson's response to Fair's motion to dismiss); ECF No. 22 (Fair's reply brief)), Judge Altman's report and recommendation to grant both motions (ECF No. 25), Vinson's objections (ECF No. 26), Fair's response to those objections (ECF No. 27), and all other applicable filings and law, including Vinson's improperly filed second amended complaint (ECF No. 19).

Having conducted this *de novo* review, and for the reasons above, the Court OVERRULES Vinson's objections to the report and recommendation (ECF No. 26), ADOPTS IN PART Judge Altman's report and recommendation (ECF No. 25), and GRANTS Fair's motion to dismiss (ECF No. 17) and Fair, Burris, and McGuire's motion to strike (ECF No. 20). A separate judgment will follow.

SO ORDERED.

Dated: September 30, 2025

                                              s/Laurie J. Michelson
                                              LAURIE J. MICHELSON
                                              UNITED STATES DISTRICT JUDGE